WEBBER *v.* WEBBER.

1. PARTNERSHIP — CLAIMS AGAINST FIRM — SETTLEMENT BY PART-
NER—LIABILITY OF COPARTNER.

A partner is bound by the act of his copartner in settling a
claim against the partnership for services of a third person,
though the settlement is made without his knowledge.

2. LIMITATION OF ACTIONS—ACCRUAL OF ACTION — DEMAND NOTE
—ANTEDATING—EFFECT.

Where a demand note is given in settlement of an account, and
antedated to cover interest for the period during which the
account has run, the statute of limitations does not begin to
run against the note until the day of its delivery to the
payee.

3. INTEREST—DEMAND NOTE—ANTEDATING—EFFECT.

An antedated note, payable "on demand after date, * * *
with interest," bears interest from the day of its date and not
from the day of its delivery.

4. PARTNERSHIP—SURVIVING PARTNER—ACCOUNTING—CLAIMS AL-
LOWABLE.

Where it appears that the surviving partner of a banking part-
nership, in settling with an employé for services, allowed him
interest on his claim during the time it remained unpaid, but
did not charge him interest on his overdrafts, such interest
is a proper charge against the surviving partner, on an ac-
counting of the partnership business.

5. SAME—FAILURE TO COLLECT—LIABILITY.

Where the survivor of a banking partnership negligently
allows claims to become barred by limitations, the amount
thereof is properly chargeable against him, on an accounting
of the partnership business.

Cross appeals from Ionia; Hosmer, J., presiding. Sub-
mitted May 8, 1906. (Docket No. 81.) Decided October
1, 1906.

Bill by Ella M. Webber, executrix of the last will and
testament of George W. Webber, deceased, against Mary

C. Webber, executrix of the last will and testament of Andrew J. Webber, deceased, for an accounting. From the decree rendered, both parties appeal. Modified and affirmed.

*Knappen, Kleinhans & Knappen* and *Morse & Locke,* for complainant.

*George E. Nichols* and *R. A. Hawley,* for defendant.

HOOKER, J. George W. and Andrew J. Webber were brothers, and for many years engaged in banking at Ionia as copartners. They also carried on a lumber business. Herbert B. Webber was in their employ as manager of the banking business, and is claimed by the defendant to have managed the lumber business. He and his brother George H. were sons of Andrew J. Webber. George W. Webber died in January, 1900, and Herbert B. Webber, acting for his father as survivor, proceeded to close up the copartnership business, until Andrew J. Webber's death, which occurred October 17, 1902. This bill is filed by Ella Webber, executrix of the estate of George W. Webber, against Mary C. Webber, the executrix of Andrew J., for an accounting. Both parties have appealed from the decree rendered.

The items claimed by complainant to be chargeable against the defendant are:

(1) The amount of cash on hand, $252.96; (2) a bank overdraft of George H. Webber, $742.37; (3) an overdraft of A. J. Webber as receiver, $489.03; (4) the principal of a note paid H. B. Webber by A. J. Webber, $3,891.49; (5) interest paid upon said note, $1,415.61; interest on above, $373.09; (6) interest upon an alleged excess of overdrafts of H. B. Webber over said note, $202.12; or if interest is not allowed on note, then interest on all overdrafts of H. B. Webber from 1896 to April 30, 1901; (7) a note given by George H. Webber with interest, $836.04; (8) an overdraft by George H. Webber of $1,249.62, and interest; (9) a note given by George H. Webber for $1,690.90, with interest.

Defendants admit the first three items, and we shall consider the others, stating in each instance such facts as will serve to show the nature of the question before us.

4. A check dated March 7, 1900, and signed "Webber Bros.," for $5,307.10, payable to H. B. Webber, or bearer (note and interest) was introduced.  Upon it was a memorandum as follows:

| | | |
|---|---|---|
| Note, | | $3,891 49 |
| Int. 6 per cent. 6 yrs. | (Paid Mar. 7, 1900) | |
| 7 mo. | | |
| 18 days | | $1,415 61 |
| | | $5,307 10 |
| [Signed] | WEBBER BROS. | |

This check was drawn and delivered to H. B. Webber, by A. J. Webber, at its date, and was in payment of a note reading as follows, viz.:

"IONIA, MICH., July 17th, 1893.

"On demand after date we promise to pay to H. B. Webber, or order, thirty-eight hundred ninety-one and 49–100 dollars at the Banking House of Webber Brothers, Ionia, Michigan, with six per cent. interest.  Value received.  Paid March 7, 1900.
          [Signed]          "WEBBER BROS."

This note was executed and delivered by A. J. Webber, February 24, 1896, and there is testimony in the case which convinced the circuit judge that it was for a salary earned by H. B. Webber, in the care of the lumber business, with the acquiescence of George W. Webber.

There is testimony that this was done upon a settlement of the salary matter between A. J. Webber and H. B. Webber, and that the note was dated back to January 17, 1893, to cover interest for the period after the salary became due.  It is earnestly contended that this was not a just claim against Webber Bros., but we agree with the learned circuit judge that a fair preponderance of proof sustains the item as one due from the firm.  Aside from the testimony of H. B. Webber upon the subject, which

both parties appear to consider inadmissible, by reason of the statute, there is proof warranting the belief that H. B. Webber performed services in the lumber business; that George W. Webber treated them as worthy of payment by drawing a check in one instance. A statement of the claim was made several years before George W. died, and one of the partners adjusted the claim by giving a note. Grant that George W. knew nothing of these transactions, this settlement was as binding upon him as upon A. J. Webber, being the act of his copartner in the business of the concern, except as the relationship between A. J. and H. B. Webber may tend to discredit the good faith of the transaction. We think the proof fairly repels such an inference. The complainant's counsel say that this item should be allowed to her for another reason; i. e., that the note was barred by the statute of limitations at the time of its payment, viz., March 7, 1900; being after the death of George W. Webber. The learned circuit judge held that the statute did not begin to run upon this note until it was executed and delivered, and in this we think that he was manifestly right. The note was made and delivered February 24, 1896. It was payable on demand after date, the date being January 17, 1893. A right of action could not accrue on the note until it was made, and the statute of limitations fixes the period within which action must be commenced at six years after the right of action accrued.

The case of *Collins* v. *Driscoll*, 69 Cal. 550, is in point, holding that the date of delivery of an antedated note, payable one day after date, determines the time at which the statute begins to run. The case of *Paul* v. *Smith*, 32 N. J. Law, 13, is distinguishable. In that case the new promise was a second note antedated nearly five years, and payable three months after date. Its delivery was accompanied by a refusal to make a payment or an acknowledgment of the debt, so as to prevent the former note from being outlawed. It was held that the substance of the transaction disclosed by the evidence was that, by giv-

ing a new note dated about a year later than that originally made, the defendant promised to pay the debt, and remain liable to an action six years from the time the new note became due, but not longer; and that the case, therefore, came within the established rule that the acknowledgment of a debt, if accompanied by a promise to pay conditionally, is of no avail, unless the condition to which the promise is subjected by the defendant is complied with, or the event has happened on which the promise depends. It was said it (the note) was not antedated by mistake, or for any unlawful purpose, but to carry into effect the object of the parties. To alter the date, or to give it a legal effect different from that expressed on its face, is not required for the purpose of justice, but would be to make a new bargain for the parties, and thus to do an injustice. We have not been referred to any other case supporting the doctrine that the time when a statute of limitations should begin to run might be anterior to the delivery of the note evidencing the obligation, because such note was antedated; and we think that the case of *Collins* v. *Driscoll*, rather than that of *Paul* v. *Smith*, states the better rule.

5. Interest on the principal of this note was allowed against the defendant. This holding was made to rest upon the case of *In re King's Estate*, 94 Mich. 411, where it was held that interest did not begin to run upon a note payable upon demand until payment was demanded. By the express terms of the note in that case, it bore interest only "after maturity," which, for the purpose of determining when interest should begin to run, a majority of the court held to require a demand. In this case the note merely provides for the payment of interest. It is not limited to after maturity. It was not necessary, therefore, to make a demand to start the running of interest, for the note provided for its payment from the time that the note became an obligation, i. e., the date of its delivery, if not the date of the note, and we may add that while, for the purpose of determining the time when

the statutory period expired, it was proper to ascertain the date of delivery, such date was not conclusive of the time interest began to run, as the parties had a right to make interest begin from an earlier date, so long as they did not violate the usury law, of which there is, and could be, no claim. The note does not state in express terms that it shall bear interest "from date," but that is implied; and to dispute it would be to vary the terms of the instrument by parol.

It is conceded that if the note had been made payable one day after date or one day after demand, with interest, the obligation to pay interest from date would be clear. No good reason suggests itself for saying that making the note due on demand, i. e., at once, should be taken as an indication of an intention to defer the running of interest until demand, though it can be reasonably said when the running of interest is expressly stated to be "after maturity." 2 Daniel on Negotiable Instruments (5th Ed.), § 1458, and note 61. We conclude, therefore, that the court should have held the item of interest to have been a proper credit.

6. The sixth item relates to interest upon certain overdrafts which H. B. Webber made, and the bank carried for a long period. A. J. Webber did not require payment of this, but paid full interest on H. B. Webber's note, without making a claim for interest on overdrafts, and H. B. Webber never paid it. In his (H. B. Webber's) capacity of representative of the firm and afterwards of the survivor, it was his duty to see that this was paid, and it is equitable that this should be a charge against the receivers in this case. The amount is not at hand, but will be determined on the settlement of the decree, if counsel cannot agree upon it.

7. A note of $500 was given by George H. Webber to the bank, and this was permitted to become barred after the death of George W. Webber, under circumstances which are not creditable to the survivor or his representa-

tive. The circuit judge allowed this item as claimed by the complainant, and in this we concur.

8 and 9. At the time of George .W. Webber's death, George H. Webber had overdrawn his account at the bank $1,249.62. He also had a note there of $1,690.90 bearing interest. After the death of A. J. Webber, his administratrix, although diligent in the collection of other claims, did not press these claims. She acted in a fiduciary capacity, and was under obligation to the estate of George W. Webber to use every effort to collect these claims, which we believe could have been collected had H. B. Webber cared to do it, and she cared to have it done. The items should be allowed, the latter with interest. The decree will provide for the charging against defendant the following items:

1. Cash on hand.
2. George H. Webber's overdraft, $742.37, with interest to date of decree.
3. The A. J. Webber receivership overdraft with interest to date of decree.
6. Interest on the overdrafts of H. B. Webber from 1896 to April 30, 1901.
7. The amount of the $500 note of George H. Webber, with interest to date of decree, as per provisions of the decree of circuit court.
8. The $1,249.62 overdraft, with interest from the date of filing of the bill to date of decree.
9. The $1,690.90 note, with interest at rate of 6 per cent. to commencement of suit, afterwards 5 per cent. to date of decree.

It is conceded by counsel that an item of $1,000 advanced by A. J. Webber was a proper charge, and that the decree should so state.

Subject to the modifications herein indicated, the decree will be affirmed, with taxable costs of both courts to the complainant.

CARPENTER, C. J., and MCALVAY, BLAIR, and MOORE, JJ., concurred.